MODERN BUILDERS, Inc., v. BUILDING INSPECTOR OF CITY OF TULSA et al.

No. 32076.    April 30, 1946.

*168 P. 2d 883.*

Kavanaugh Bush, G. Ellis Gable, and Chas. P. Gotwals, Jr., all of Tulsa, for plaintiff in error.

Chas. R. Bostick, City Atty., and Eben L. Taylor, both of Tulsa, for defendants in error.

DAVISON, J.   This appeal involves the application of certain ordinances of the city of Tulsa to a case in which plaintiff in error, hereinafter referred to as plaintiff, applied to the building inspector of said city for permission to build a one-family dwelling on a portion of lot 2, block 15, of White City addition to said city.   As shown on the recorded plat of said addition, lot 2 is rectangular in shape, being 140 feet in width and 180 feet in length from its front line on the north to its rear or south line.   According to plaintiff's application, the proposed dwelling was to be erected on the east 70 feet or half of said lot.

The building inspector denied plaintiff a building permit, whereupon it appealed to the board of adjustment of said city.   After said board upheld the action of the building inspector, plaintiff appealed to the district court.   After a trial de novo, said court entered judgment denying plaintiff any relief from the inspector's refusal to issue the permit upon the ground that said refusal was in compliance with Tulsa ordinances, which the court found "in their entirety and not with respect to any specific section thereof, provide that only one house may be built on òne lot according to the recorded plat thereof . . ."

In its present appeal from said judgment, plaintiff contends that the ground upon which said judgment was based, as above shown, represents both an erroneous and unconstitutional interpretation of Tulsa's ordinances dealing with building restrictions in residential areas. Most of the briefs of both parties is taken up with arguing the affirmative and negative of whether such ordinances, when given a fair interpretation, do or do not forbid the building of more than one dwelling house on a lot in a district such as the one in which the lot is located.   In our opinion, however, this is not the precise question to be determined.   Neither in the stipulation of facts and evidence presented to the trial court, nor in the briefs filed herein, is it shown that there is any kind of a building on any part of lot 2, so that whether or not two houses can be erected on said lot is a question not invoked by plaintiff's application to build only one house on the east half of said lot.   As we view the matter, the only concrete question at issue is whether or not the ordinances in question allow the placing of a dwelling upon the east one-half of the parcel of land designated as lot 2 on the recorded plat of the White City addition.

According to the stipulation of facts, the lot in question is located within a "Class U-1 Restricted Residence District," which is one of the classes of "use districts" described and defined by the provisions of Tulsa Zoning Ordinance No. 2576 and within a "Class A-1" district which is one of the so-called "area districts" described and defined in said ordinance.

In the interest of brevity, reference to a lot or lots designated by number as such on the recorded plat of the White City addition will hereinafter be made by employing the terms "recorded lot" or "recorded lots."

In support of their argument that a recorded lot is not required for the site of a dwelling and that the building of dwellings on smaller sites is comprehended by the ordinances in question, counsel for plaintiff refers to section 12 of ordinance No. 2576, supra, which provides in part as follows:

"(a) In a Class A-1 district no dwelling shall be erected or altered to accommodate or make provision for more than one family for each 7000 square feet of the area of the lot.

"(b) In a Class A-2 district no dwelling or apartment house shall be erected or altered to accommodate or make provision for more than one family for each 875 square feet of the area of the lot.

"(c) In a Class A-3 district no dwelling or apartment house shall be erected or altered to accommodate or make provision for more than one family for each 218.75 square feet of the area of the lot."

With plaintiff's proposed site measuring 70' x 180' and having an area of 12,600 square feet, it is manifest that its building of a one-family dwelling on said site would not violate paragraph (a), supra, pertaining to Class A-1 districts, and the trial court's finding that such construction would not violate any other specific provision of this or any other cited ordinance is concededly correct. The defendant argues, however, that section (a), supra, is simply a minimum requirement and seeks to demonstrate the unsoundness of plaintiff's reliance on that provision by pointing out that the words in the above-quoted ordinance referring to structures are in the singular, to wit: "dwelling" and "apartment house." He says that if the ordinance contemplated the building of more than one such structure on a lot, the plural of these words would be used. In this connection, it is also pointed out that if the minimum area requirements specified in section 12, supra, were the only criteria, as many as 16 separate houses could be built on a lot the size of the

one in question if situated in a Class A-2 district, or 64 such houses if the lot were in a Class A-3 district, and the placing of that number of dwellings on a lot would obviously violate the side yard, rear yard, front yard and building line requirements for residential districts set forth in sections 15, 16, and 17 of said ordinance. We do not consider such hypothetical scheme of placing many dwellings on lots in Class A-2 and Class A-3 districts in obvious violation of the various other space provisions cited, as illustrative of any point in this case, where it is conceded that no such provision would be violated.

Defendant seems to place great reliance on section 21 of Ordinance No. 2576, supra, which requires that all applications for building permits be accompanied by a plat in duplicate drawn to scale showing the actual dimensions of the lot to be built upon, etc., and in paragraph (m) thereof defines a "lot" as follows:

"A lot for the purposes of this ordinance is a parcel of ground which is or shall be recorded by lot and block number in the office of the county clerk of Tulsa County, Okla., as an addition or part thereof of the City of Tulsa. A lot may be further constructed as a parcel of land occupied by one building and the necessary buildings or uses customarily incident to it, including such open spaces as are required by this ordinance. . . ."

Plaintiff's counsel construes the portion of the ordinance above quoted as supporting his position, saying that it contains two alternative definitions of a lot, and that plaintiff's half of lot 2 may be deemed a "lot" under the second of said definitions. Defendant takes the position that the second definition contained in said paragraph applies only to areas annexed to the city without being platted into lots and blocks. Such a contention impliedly admits that one could correctly obtain a permit to build a dwelling on a parcel of land incorporated in a residential dis-

trict of the city without the plat attached to the application for said permit showing as the proposed site for said dwelling a lot of any certain shape or size over 7,000 square feet in area. In our opinion, the question of whether any parcel of land except a recorded lot may be considered a "lot" for any restricted residential purpose within the meaning of the ordinances in question is conclusively laid at rest by paragraph (c) of section 13, which reads:

"In computing the percentage of the area of the lot for the purpose of this section, any part of the area of any corner lot in excess of 7,000 square feet shall be considered an interior lot."

As its width and area are the only characteristics in which the site for plaintiff's proposed dwelling differs from the recorded lots in the White City addition and as it is not shown to be deficient in either of such characteristics, under the specifications prescribed in the ordinances cited, there is obviously no positive justification for the denial of plaintiff's application in the express terms of said ordinances. Zoning ordinances, being in derogation of the common law right to use private property so as to realize its highest utility, should not be extended by implication to cases not clearly within their scope and purpose. See Landay v. MacWilliams, 173 Md. 460, 196 Atl. 293, 114 A. L. R. 984.

No practical support for defendant's position is contained in Howard v. Mahoney, 188 Okla. 89, 106 P. 2d 267, cited by both parties. In that case the use to which an extra building erected on the lot was to be employed was considered the decisive factor rather than the dimensions of the lot.

With no positive prohibition against the erection of a one-family dwelling on a lot or parcel of ground such as the one in question to be found in the city ordinances cited, and no substantial basis for the implication of such a prohibition, the trial court erred in upholding defendant's denial of plaintiff's application.

Our conclusion renders unnecessary any discussion of the other proposition plaintiff urges for reversal.

The judgment of the trial court is reversed.

GIBSON, C.J., and RILEY, OSBORN, WELCH, and CORN, JJ., concur.